Jeff Dominic Price   JDP PC  |  SBN 165534
730 Arizona Avenue, Suite 200
Santa Monica, California 90401-1702
jdp@jdpfirm.com
Tel. 310.451.2222

Attorney for the Plaintiffs, individually and
as class representatives

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

KEVIN STEWART and JUAN CARLOS VAZQUEZ, on behalf of themselves and others similarly situated,

        Plaintiffs,

        vs.

ROBERT LUNA, SHERIFF, LIEUTENANT DESCHINO, SGT. JOHN DOE, CAPTAIN SCHRINER, ALEX VILLANUEVA, SGT. MATHERLY, DEPUTY GUTIERREZ, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, COUNTY OF LOS ANGELES, Does 1-50 inclusive,

        Defendants.

No.

COMPLAINT

1. 42 U.S.C. § 1983 – Deprivation of Constitutional Rights, Excessive Force 4th and 14th Amendments and Substantive Due Process;
2. 42 U.S.C. § 1983 – Municipal and Supervisory Liability;
3. California Civil Code § 52.1(b) – Civil Rights Violations;
4. Negligence

Demand for Jury Trial

    1.    This is a proposed class action lawsuit arising from the objectively unreasonable and conscience-shocking use of tear gas employed by the Los Angeles County Sheriff's Department on April 21, 2022, at the North County Correctional Facility.

    2.    On April 21, 2022, the plaintiffs were pretrial detainees incarcerated at the Los Angeles County North County Correctional Facility ("NCCF") jail located in Castaic, California, in the custody of the defendants, the Los Angeles County

Sheriff's Department ("LASD") and the County of Los Angeles ("County" or "LACO") and their officials and employees; this is an action arising from the Defendants' use of excessive force against the plaintiffs and concurrent failure to provide for their serious medical needs, failure to provide prompt treatment, negligence, and failure to perform other legal obligations concerning plaintiffs' statutory and constitutional rights.

## Jurisdiction

3.      Plaintiffs present federal claims for relief under 42 U.S.C. § 1983. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because it is being brought to obtain compensatory and punitive damages for the deprivation, under color of state law, of the rights of citizens of the United States that are secured by the United States Constitution, pursuant to 42 U.S.C. §§ 1983 and 1988. This action is brought pursuant to the Fourth, and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of California. Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367 (a), to hear and decide claims arising under state law, which are so related to their federal law claims that they form part of the same case or controversy.

4.      Venue is proper in the United States District Court for the Central District of California, pursuant to 28 U.S.C. § 1391(b)(1)-(2), because the named defendants, and other, to-be-identified (currently named as Does) defendants reside in this judicial district, and a substantial part of the events or omissions giving rise to the claims occurred in the County of Los Angeles in this judicial district.

5.      Plaintiffs/Class Representatives and class members timely filed class administrative claims with the County of Los Angeles pursuant to Cal. Gov't Code § 910 et seq. The claims were denied on December 19, 2022.

## Parties and Procedure

6.      Plaintiff-Class Representatives Kevin Stewart and Juan Carlos Vazquez were  pretrial detainees incarcerated in the custody of the LASD at NCCF on April 21, 2022, housed in Unit 711, and were subjected to the use of excessive force described in this pleading.

7.      Defendant County of Los Angeles is a municipal corporation, duly organized and existing under the laws of the State of California, charged with and responsible for appointing and promoting the employees of the entity, and for the supervision, training, instruction, discipline, control and conduct of said employees; at all times alleged herein such defendant had the power, right and duty to control the manner in which the individual defendants carried out the objectives of their employment and to assure that all customs, practices, orders, rules, instructions, and regulations promulgated were consistent with the United States Constitution, the California Constitution, the laws of the United States, the laws of the State of California, and the laws of the municipality; under its authority, the County oversees the Los Angeles County Sheriff's Department.

8.      Defendant Los Angeles County Sheriff's Department is an agency of the County of Los Angeles, duly organized and existing under the laws of the State of California, operated by the Sheriff and charged with and responsible for appointing and promoting, the employees of the entity, and for the supervision, training, instruction, discipline, control and conduct of said employees and for operating the county jails; at all times alleged herein such defendant had the power, right and duty to control the manner in which the individual defendants carried out the objectives of their employment and to assure that all customs, practices, orders, rules, instructions, and regulations promulgated were consistent with the United States Constitution, the California Constitution, the laws of the United States, the laws of the State of California, and the laws of the municipality.

9.      Defendant Alex Villanueva was, on April 21, 2022, the Sheriff of the County of Los Angeles and the final policymaker and head of the LASD, sued in his individual and official capacities, who set in motion a series of acts by his subordinates, or knowingly refused to terminate a series of acts by his subordinates that he knew or reasonably should have known would cause the subordinates to deprive the plaintiffs of their constitutional and statutory rights, who knew of and specifically made a deliberate choice to approve the acts of the officers and defendants and the bases for them and ratified the tortious conduct that is the subject of this action and approved of unconstitutional additional punishment visited upon plaintiffs in an effort to cover up and minimize the tortious conduct that was perpetrated by the defendants on April 21, 2022, as described herein, and also approved of, and ratified, the attempt by the LASD to suborn perjury by the use of intimidation on the part of the interviewer who directed inmates to make false statements about the incident and to deny the truth before turning on the video camera in a further effort to cover up, spoliate evidence of, and obliterate true accounts of the heinous acts perpetrated by his subordinates.

10.      Defendant Robert Luna was elected Sheriff in November 2022 and is the Sheriff of the County of Los Angeles and the final policymaker and head of the LASD, who knew of and specifically made a deliberate choice to approve the acts of the officers and other defendants and the bases for them and ratified the tortious conduct that is the subject of this action and approved of and ratified unconstitutional additional punishment visited upon plaintiffs in an effort to cover up and minimize the tortious conduct that was perpetrated by the defendants on April 21, 2022, as described herein, and also approved of, and thus ratified, the attempt by the LASD to suborn perjury by the use of intimidation on the part of the interviewer who directed inmates to make false statements about the incident and to deny the truth before turning on the video camera in a further effort to cover up,

spoliate evidence of, and obliterate true accounts of the heinous acts perpetrated by his subordinates.

11.     Defendant Captain Schriner was a unit commander and supervisor at NCCF on the day at issue, on April 21, 2022, sued in his individual and official capacities, who knew of and specifically made a deliberate choice to approve the acts of the officers and other defendants and the bases for them and ratified and participated in the tortious conduct that is the subject of this action and approved of unconstitutional additional punishment visited upon plaintiffs in an effort to cover up and minimize the tortious conduct that was perpetrated by the defendants on April 21, 2022, as described herein, and also approved of, masterminded, directed and supervised the attempt by the LASD to suborn perjury by the use of intimidation on the part of the interviewer who directed inmates to make false statements about the incident and to deny the truth before turning on the video camera in a further effort to cover up, spoliate evidence of, and obliterate true accounts of the heinous acts perpetrated by his subordinates, whom he supervised. He signed off on the unconstitutional disciplinary sanctions and the 25-day restriction imposed on the plaintiffs, falsely stating that there was a major disturbance in aiding and abetting the cover-up.

12.     Defendant Lieutenant Deschino was a supervisor at NCCF on the day at issue, on April 21, 2022, who knew of and specifically made a deliberate choice to approve the acts of the officers and other defendants and the bases for them and ratified and participated in the tortious conduct that is the subject of this action and approved of unconstitutional additional punishment visited upon plaintiffs in an effort to cover up and minimize the tortious conduct that was perpetrated by the defendants on April 21, 2022, as described herein, and also approved of, masterminded, directed and supervised the attempt by the LASD to suborn perjury by the use of intimidation on the part of the interviewer who directed inmates to

make false statements about the incident and to deny the truth before turning on the video camera in a further effort to cover up, spoliate evidence of, and obliterate true accounts of the heinous acts perpetrated by her subordinates, whom she supervised. She was present during and approved of the use of force event in Unit 711 and signed off on the unconstitutional disciplinary sanctions and the 25-day restriction imposed on the plaintiffs, falsely stating that there was a major disturbance in aiding and abetting the cover-up.

13.    Defendant Sgt. Matherly was a supervisor at NCCF on the day at issue, on April 21, 2022, and participated in, approved of and ratified the tortious conduct that is the subject of this action and approved of unconstitutional additional punishment visited upon plaintiffs in an effort to cover up and minimize the tortious conduct that was perpetrated by the defendants on April 21, 2022, as described herein, and also approved of, masterminded, directed and supervised the attempt by the LASD to suborn perjury by the use of intimidation on the part of the interviewer who directed inmates to make false statements about the incident and to deny the truth before turning on the video camera in a further effort to cover up, spoliate evidence of, and obliterate true accounts of the heinous acts perpetrated by his subordinates, whom he supervised. She was contemporaneously aware of the use of force event in Unit 711 and signed off on the unconstitutional disciplinary sanctions and the 25-day restriction imposed on the plaintiffs, falsely stating that there was a major disturbance in aiding and abetting the cover-up.

14.    Defendant Deputy Gutierrez was a Deputy Sheriff at NCCF on the day at issue, on April 21, 2022, and initiated and participated in and failed to intervene to stop the tortious conduct that is the subject of this action.

15.    Sergeant John Doe was an LASD Sergeant and supervisor who set off the gassing of Unit 711 on April 21, 2022, oversaw the brutal event from start to finish, and he (1) directed the actions of his subordinates who participated in the use

of excessive force against the pretrial detainee plaintiffs, (2) set in motion a series of acts by his subordinates, or knowingly refused to terminate a series of acts by his subordinates that he knew or reasonably should have known would cause the subordinates to deprive the plaintiffs of their constitutional and statutory rights, (3) knew that his subordinates were engaging in the acts described in this pleading and knew or reasonably should have known that the subordinate's conduct would deprive plaintiffs of their constitutional and statutory rights and he failed to act to prevent his subordinates from engaging in such conduct, (4) disregarded the known or obvious consequence that the training deficiencies or omissions would cause his subordinates to violate the plaintiffs' constitutional and statutory rights, and (5) engaged in conduct that showed a reckless or callous indifference to the deprivation by the subordinates of the rights of others.

16.     The individual defendants were at all relevant times acting within the scope of their employment and under color of law.

17.     At all times material, Defendant LASD was a public entity operating the NCCF, prior to, during, and at the time of, the acts, omissions, and other events that gave rise to this litigation, and was responsible for supervising employees, including the defendants and all of the personnel who were instrumental in the gassing, enacting, approving and enforcing the LASD rules of conduct, policies, and practices, as well as the hiring, retaining, and training of employees and agents of the County, LASD, including the defendants, certain Doe defendants, and all of County's, and or LASD's members, agents, and employees.

18.     Certain Doe defendants, at all material times, were employees and agents of Defendant LASD, responsible for appropriate and safe housing, housing classification, monitoring, supervision, safety, and protection of pretrial detainees, in the County's jail, with appropriate observation, as well as being responsible for promptly summoning medical care for seriously injured detainees. In doing the acts

or omissions hereinafter described, certain Doe Defendants acted within the course and scope of their employment with LASD and acted under color of state law.

19.     The true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants named herein as Does 1 through 50 are unknown to Plaintiffs, so Plaintiffs therefore sue said Defendants by said fictitious names. Plaintiffs will amend this Complaint to show said defendants' true names and capacities when the same have been ascertained. Plaintiffs are informed, believe, and thereon allege that all Defendants sued herein as Does are in some manner responsible for the acts, omissions, and injuries alleged herein.

20.     Plaintiffs allege that each of the Defendants sued herein was wrongfully, recklessly, intentionally, deliberately indifferently, and negligently responsible in some manner for the events and happenings as described here, and proximately caused injuries and damages to Plaintiffs.

21.     Plaintiffs are informed, believe, and thereon allege that each of the defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and or alter ego of the remaining Defendants, and in doing the things alleged here, was acting within the course and scope of that relationship. Plaintiffs are further informed, believe, and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and or authorized the acts or omissions of each Defendant as alleged herein, except as may hereinafter be otherwise, specifically alleged. At all material times, each Defendant was an integral participant, jointly and fundamentally engaged in constitutionally violative, unlawful, and or tortious activity, resulting in the deprivation of Plaintiffs' constitutional rights and other actionable harm.

22. The acts and omissions of all Defendants were at all material times done pursuant to the customs, practices, policies, and procedures of LACO and the LASD.

23. This complaint may be pled in the alternative, pursuant to Rule 8(d)(2) of the Federal Rules of Civil Procedure.

24. Under Rule 9(b) conditions of a person's mind, such as, but not limited to, malice, intent, and knowledge may be alleged generally.

### Statement of Facts

25. On April 21, 2022, at 11:00 p.m. in the County of Los Angeles, Plaintiffs were incarcerated pretrial detainees housed in NCCF Unit 711.

26. Unit 711 is comprised of an upper and lower tier, each containing 11 triple bunks, numbered 12-22 on the top and 1-11 on the bottom, with a capacity of 66 inmates.

27. Mr. Vazquez was on his bunk ready to go to sleep.

28. At approximately 11:00 p.m. Defendant Gutierrez ordered inmates to get off the phones; two inmates did not immediately get off the phones.

29. Defendant Gutierrez then walked up to the gates and ordered everyone to get on their bunks.

30. Some inmates did not comply at first.

31. Defendant Gutierrez again ordered everyone in the unit to get onto their bunks.

32. The two inmates got off of the phones and as they were walking away from the phones one of them said something that may have been directed at Defendant Gutierrez.

33. Defendant Gutierrez directed the inmates to come to the gate and be handcuffed.

34. They did not comply and went back to their bunks, upstairs.

35.    The Deputy repeated the order for the two inmates to cuff up.

36.    An inmate said something to Deputy Gutierrez in response.

37.    Defendant Gutierrez repeated the order for the two inmates to cuff up.

38.    Defendant Gutierrez then went inside the booth.

39.    Sergeant John Doe arrived with at least 20 officers equipped in riot gear, shields, and gas masks, carrying tasers, wood staffs, block guns and pepper spray.

40.    They ordered the inmates to put their property on their bunks and face the wall.

41.    About 3 or 4 of the officers were talking through the gas masks — they were cursing and insulting the plaintiffs and the other inmates.

42.    One of the officers or the Sergeant called out the two inmates who had been ordered to cuff up and an inmate had approached the bars and was trying to explain the situation and deescalate the situation.

43.    The officers did not agree.

44.    The officers ordered the two inmates to come to the gate and stated that if they were not at the gates in two minutes that they would gas the unit.

45.    The two inmates were walking down the stairs when an inmate yelled out to the officers and then the Sergeant said that it was too late.

46.    Before the 2-minute mark passed one of the officers said something and then turned on an industrial fan and began tear gassing the entire unit.

47.    Mr. Vazquez could not breath; he thought he could die.

48.    He was also hit by a couple of the pepper balls in the head.

49.    His back was burning for three days.

50.    Mr. Stewart could not breathe and was afraid that he was going to suffocate to death.

51.    Other inmates started to scream and there a cacophony of screaming voices calling out in fear — calling for their mothers, calling for god, saying

prayers, some inmates, obviously thinking that they were going to die, like they were being waterboarded, were saying tell my kids that I love them etc.

52.   All of the inmates had been complying with the orders to get onto their bunks and face the wall.

53.   The officers loaded tear gas canisters in front of the fan, and loaded approximately 58 such canisters in front of the fan so the fan atomized and dispersed the tear gas throughout the unit.

54.   There was such a thick fog of tear gas permeating the unit that it was difficult to see across the unit.

55.   One inmate was running towards a door to the unit but because of the gas fog he ran into the door; officers then grabbed him and threw him onto the floor, which was wet with tear gas, like it was raining, and then the officers sprayed him with tear gas or pepper spray as they laughed at the helpless inmate.

56.   An elderly inmate fell off of a middle bunk because of the tear gas and the conduct of the defendants and his back was injured.

57.   Inmates were continually desperately screaming, yelling and crying, calling for help, and calling for their mother, but more gas came, along with pepper balls that were shot at the inmates, while the LASD officers sadistically laughed at them; this was all ratified by the policymaker and supervisory defendants, as it was videorecorded and reviewed by them.

58.   Every inmate in the unit was suffering from the cruel and unusual effects of the extreme amount of tear gas that the defendants forced into the unit and some were hit with pepper balls that were fired into the unit by the officers; no inmate was spared, while the officers were protected by gas masks.

59.   Inmates, including the plaintiffs, could not breath due to the volume of tear gas pumped into the unit and they feared for their lives and feared that they would suffocate and die.

60.     Inmates were running throughout the unit like they were running from grenades, in all directions, some, blinded by the tear gas, and some were slipping and falling onto the tear gas soaked floors and suffering injury from falling on the concrete.

61.     The officers also fired pepper balls from guns at the frantic inmates, hitting some of them with the pepper balls, which contained oleoresin capsicum.

62.     The officers were laughing and joking about the inmates in Unit 711 as they watched them suffer.

63.     Many of the inmates were vomiting because of the defendants' actions.

64.     The officers kept pumping tear gas into the unit, they were firing pepper balls, they were shooting inmates with pepper spray from hand-held cannisters, as inmates ran towards the bars, laughing as they were doing so.

65.     The officers ordered everyone to line up but then told them to get back on their bunks.

66.     Then the officers ordered them to leave the unit by sections.

67.     The inmates had only boxers on or boxers and t-shirts.

68.     They were ordered to go to a large dayroom.

69.     Once they were in the dayroom the officers told the inmates not to go to medical in a threatening manner and to be quiet.

70.     They were in the dayroom for hours.

71.     In the middle of the night the officers started calling the inmates out in groups, like cells 1-4, 5-8, and then those inmates would go to the dorm and get all of their property and be ordered to throw all of their property into a large container for disciplinary reasons.

72.     The officers called the Unit 711 inmates by name and took them to a place next to another unit where they recorded the inmates, one by one; a male deputy, holding the hand held video camera, flanked by a female deputy, held the

camera pointing down while he told Mynor D. Larios to "say that you were on your bunk and that you did not see anything," and then he turned on the camera and pointed it at Mr. Larios and then asked what happened in there and what did he see; Mr. Larios was afraid and wanted to be released on schedule, so he complied with the deputy's orders.

73.     The older white male deputy separated the inmates one by one before turning the camera on them; some of the inmates explained what actually happened.

74.     Every inmate who was subjected to this cruel, gratuitous and perverse punishment, described herein, was also punished for 25 days; the defendants (1) took the hot pot; (2) prevented all phone calls; (3) cut off exercise; (4) turned off the television; (5) took away their store and started giving the inmates, including plaintiffs, less food, e.g., one burrito instead of two, and took away their blues and their t-shirts and socks, so that plaintiffs were wearing boxers only.

75.     This punishment was sanctioned by Defendant Deschino and all of the other supervisory defendants and defendants in an effort to cover up the use of excessive force; these actions specifically show the oppressive and callous disregard for the rights of the plaintiffs and others.

76.     There was no visitation for plaintiffs during this period; even lawyers were blocked from visiting their clients in Unit 711 because the defendants blocked legal visits.

77.     Deputy Case was a Deputy Sheriff at NCCF on the day at issue, on April 21, 2022, and, on information and belief, participated in the tortious conduct that is the subject of this action.

78.     Deputy Valadez was a Deputy Sheriff at NCCF on the day at issue, on April 21, 2022, and, on information and belief, participated in the tortious conduct that is the subject of this action.

79.     Deputy Demello was a Deputy Sheriff at NCCF on the day at issue, on April 21, 2022, and, on information and belief, participated in the tortious conduct that is the subject of this action.

80.     Deputy Iwanski was a Deputy Sheriff at NCCF on the day at issue, on April 21, 2022, and, on information and belief, participated in the tortious conduct that is the subject of this action.

81.     At all material times and, alternatively, the actions and omissions of each Defendant were intentional, wanton, willful, conscience shocking, reckless, callous, malicious, and deliberately indifferent to Plaintiffs' rights, and grossly negligent and negligent.

82.     As a direct and proximate result of each Defendant's acts and or omissions as set forth above, Plaintiffs sustained the following injuries and damages, past and future, including, but not limited to:

    a.  Extreme pain from the burning of their eyes and other parts of their bodies;

    b.  Vomiting or choking from the tear gas;

    c.  Inability to breathe;

    d.  Extreme fear that they were going to die because they could not breathe;

    e.  Emotional distress, grief, sorrow, anxiety, sleeplessness, humiliation, and indignity;

    f.  Loss of enjoyment of life;

    g.  All other legally cognizable special and general damages;

    h.  Violations of state and federal constitutional rights; and,

    i.  All damages and penalties recoverable under 42 U.S.C. §§ 1983 and 1988, California Civil Code §§ 52 and 52.1, and as otherwise allowed under California and United States statutes, codes, and common law.

83.     There was no justification for the actions of the defendants on April 21, 2022, as described here; there was no crime or other circumstances that warranted

the use of tear gas against the plaintiffs, none of the inmates in Unit 711 posed a threat to the safety of the officers or others, plaintiffs were not resisting arrest or disobeying orders but were compliant with the orders, the officers had time to deliberate but still used substantial force against plaintiffs, the amount of force was extreme in relation for any conceivable need for the use of force, no force was needed, and the officers never tempered the use of force.

84.     Defendant Villanueva held final policymaking authority from the County in the operation and management of the Los Angeles County jails and facilities, including NCCF, and concerning the acts and conduct of the individual defendants in this case, including the subordinate defendants.

85.     Defendant Villanueva knew of and specifically made a deliberate choice to approve of the acts and conduct of the defendants and the bases for their acts and conduct.

86.     Defendant Luna holds final policymaking authority from the County in the operation and management of the Los Angeles County jails and facilities, including NCCF, and concerning the acts and conduct of the individual defendants in this case, including the subordinate defendants.

87.     Defendant Luna knew of and specifically made a deliberate choice to approve of the acts and conduct of the defendants and the bases for their acts and conduct.

88.     All supervisorial liability defendants, including but not limited to Villanueva, Schriner, Deschino, and Matherly, set in motion a series of events that led to the use of excessive force described in this pleading, and, specifically, defendants Villanueva and Luna, each a final policymaker and the Sheriff, and the supervisor of the individual defendants, specifically ratified the actual conduct of the individual defendants that is the subject of this action by (1) knowing of and specifically approving of the decisions made and the actions taken by the

subordinate officers and defendants, (2) specifically approving of the bases for those decisions made by those officers and defendants, and (3) so ratifying and approving of the decisions and bases for the decisions of the officers and defendants by means of the product of a conscious, affirmative choice to ratify the decisions and conduct of the officers and defendants, in a callous, fraudulent, oppressive manner and with reckless disregard for the rights of the plaintiffs and others.

89.     The training policies of the County and the LASD were not adequate to train LASD employees to handle the usual and recurring situations with which they were faced involving pretrial detainees incarcerated in the NCCF.

90.     The County, Villanueva, and the LASD were deliberately indifferent to the known or obvious consequences of their failure to train jail employees adequately.

91.     The failure of County, Villanueva, and the LASD to provide adequate training caused the deprivations of the rights of the Plaintiffs by defendants, i.e., the failure of the County, Villanueva, and the LASD to provide adequate training was so closely related to the deprivation of the rights of the plaintiffs as to be the moving force that caused the ultimate injury – the deprivation of the rights of the plaintiffs under the Fourth and Fourteenth Amendments and the pain and suffering inflicted upon the plaintiffs.

92.     Defendants County, Villanueva, and the LASD, each of them or any combination of them were on actual or constructive notice that the County and LASD training program/regimen contained deficiencies that caused LASD employees and officials to conduct themselves in a manner that deprived pretrial detainees of their constitutional rights under the Fourth and Fourteenth amendments to be free from the use of excessive force, yet these defendants chose in the face of this knowledge to retain the deficient training program.

93.     Thus, the defendants' policy of inaction to the deficiencies of the LASD

training program constituted a decision on the part of County, Villanueva, and the LASD to violate the constitution.

94.     The County and LASD training program was deficient in its failure to train LASD officers and employees (1) how to use tear gas in a jail setting and in a jail setting like Unit 711, (2) how not to use tear gas in a jail setting and in a jail setting like Unit 711, (3) when and under what circumstances to use tear gas, pepper balls and pepper spray against pretrial detainees in an enclosed jail setting like Unit 711 and in jail settings generally, (4) when and under what circumstances not to use tear gas, pepper balls and pepper spray in a jail setting and in a jail setting like Unit 711 (5) how to treat pretrial detainees who have been exposed to tear gas, (6) when, if ever, to use force against pretrial detainees who are compliant, (7) when not to use force against pretrial detainees who are compliant, and, *inter alia*, (8) how to employ the continuum of force concept.

95.     Plaintiffs allege that these failures are the result of deliberate indifference on the part of defendants County, Villanueva, and the LASD by and through their decision makers and subordinates.

96.     Defendants County's, Villanueva's, and the LASD's failures to train, as described herein, were within the control of Defendants County and LASD and within the feasibility of Defendants County and LASD to alter, adjust and or correct so as to prevent some or all of the unlawful acts and injury complained of herein by Plaintiffs.

97.     As a result of the defendants' conduct, which was perpetrated intentionally, recklessly, wantonly, fraudulently, oppressively, and with reckless disregard for the rights of Plaintiffs and others, and which is so despicable that it is despised by ordinary people, Plaintiffs suffered all of the damages mentioned herein, including but not limited to inability to breathe and fear of suffocating to death, fear, feelings of degradation and helplessness, sleeplessness, anguish, despair,

fright, severe mental and emotional distress, depression, distrust, and embarrassment in violation of their federal constitutional rights and their rights under the laws of the State of California, and Plaintiffs are entitled to punitive damages.

98.     As joint actors with joint obligations and agents of each other, each defendant was and is responsible for the acts, failures and omissions of the other.

## Class Representative Allegations

99.     Plaintiffs, Kevin Stewart and Juan Carlos Vazquez bring this action under 42 U.S.C. § 1983, seeking class-wide relief pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), on behalf of themselves and all other persons similarly situated.

100.   On April 21, 2022, at approximately 11:00 p.m. Mr. Stewart woke up to yelling; the voice was ordering the inmates in the unit to put their property on their bunk and lie prone facing away from the bars and Mr. Stewart complied and put his property on his bunk and lay prone on the bunk facing away from the bars.

101.   On April 21, 2022, at approximately 11:00 p.m. Mr. Vazquez was on his bunk and he complied with the orders, placed his property on his bunk and lay prone on the bunk facing away from the bars.

102.   Neither Mr. Stewart nor Mr. Vazquez were involved in the interaction between the two inmates who were on the phones and Defendant Gutierrez.

103.   Mr. Stewart suffered from pain to his eyes and nose and his body for several days from the tear gas, he was gagging and suppressing vomiting, and he suffered from the inability to breathe and the fear that he would suffocate to death like he was being waterboarded.

104.   Mr. Vazquez suffered from pain to his eyes and nose and his body from the tear gas and he suffered from the inability to breathe and the fear that he would suffocate to death like he was being waterboarded.

105.   Mr. Vazquez was also shot in the head by pepper balls and suffered

1   pain as a result.

2   106.   After the gassing and before turning on the videorecorder on April 21,

3   2022, an officer told Mr. Stewart that they were going to videorecord him to let

4   them know that he was "okay and that everything's fine."

5   **Proposed Damages Classes**

6   107.   Plaintiffs propose a single damages class, "4/21/22 Mass Teargas

7   Damages Class," defined as follows:

8   **All NCCF Unit 711 inmates — approximately 62 (two inmates,**

9   **Treyvon Daniels and Mynor Larios have opted out and two inmates,**

10   **who did not comply with orders given by Defendant Gutierrez are**

11   **excluded) — who, on April 21, 2022, were subjected to continual tear**

12   **gassing, pepper spray and being shot with pepper balls without any**

13   **justification.**

14   108.   The proposed damages class satisfies the criteria of Fed. R. Civ. P.

15   23(b)(3). It is sufficiently numerous, is represented by plaintiffs with typical claims,

16   and presents common questions of law and fact.

17   109.   The legal and factual issues common to this class include: (1) whether

18   the deployment of the tear gas weapon, in addition to pepper spray and pepper balls

19   violated the class members' Fourth Amendment rights, including whether they were

20   subjected to excessive force; (2) whether LASD's and County's deficient policies,

21   training, and supervision caused the violation of class members' Fourth Amendment

22   rights; (3) whether the deployment of the tear gas weapon, in addition to pepper

23   spray and pepper balls violated the class members' substantive due process

24   Fourteenth Amendment rights, including whether they were subjected to conscience

25   shocking excessive force; (4) whether LASD's and County's deficient policies,

26   training, and supervision caused the violation of class members' substantive due

27   process Fourteenth Amendment rights; and (5) whether the deployment of the tear

28

gas weapon, in addition to the pepper spray and pepper balls on April 21, 2022, violated class members' rights under California law or the California Constitution, and therefore satisfies the requirements for a claim under California Civil Code § 52.1 and negligence principles.

110.   Through preliminary investigation Plaintiff's counsel has confirmed that approximately 64 persons were subjected to the previously described unreasonable use of force on April 21, 2022.

111.   Plaintiffs satisfy the typicality requirement of Rule 23(a)(3) as their claims are typical of the class. Plaintiff's claims are based on the same or similar legal theories as the claims of the class members. As detailed above, Plaintiffs were subjected to the same conditions and unlawful practices as the other class members.

**1st Claim for Relief  42 U.S.C. § 1983 – 4th and 14th Amendments**

<u>Against all Defendants</u>

112.   Plaintiffs reallege and incorporate by reference the factual allegations contained in this complaint, as though fully set forth herein.

113.   At the time of the incident set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under both Amendment IV and XIV to the United States Constitution to freedom from unreasonable seizure and to due process of law and the equal protection of the laws, were in force and effect and the individual defendants who engaged in conduct, as set forth above, who deprived Plaintiffs of their right to due process and equal protection, and exposed Plaintiffs to the use of excessive and unreasonable force, deprived plaintiffs of constitutional rights, violated those rights, and violated Amendment XIV to the United States Constitution. The plaintiffs were pretrial detainees protected by the Fourteenth Amendment under an objective standard, under *Castro. Kingsley v. Hendriskson*, 576 U.S. 389 (2015) and *Castro v. County of Los Angeles*, 844 F.3d 1060 (9th Cir. 2016) (*en banc*).

114.   The use of this excessive force amounts to punishment.

115.   Plaintiffs and class members were pretrial detainees and cannot be punished under the Constitution of the United States of America.

116.   Plaintiffs also assert this claim under the substantive component of the due process clause of the Fourteenth Amendment because the actions and conduct of the defendants shock the conscience and constitute deliberate indifference; the purpose to harm analysis is inapplicable because this did not involve a high-speed chase or analogous circumstance.

117.   By the actions and omissions described above, the individually named Defendants violated 42 U.S.C. § 1983, depriving Plaintiffs of the following well-settled constitutional rights that are protected by the Fourth and Fourteenth Amendments to the U.S. Constitution:

    a.  The right to be free from an unreasonable ongoing seizure and from the use of excessive force as a pretrial detainee, as secured by the Fourth and Fourteenth Amendments; and

    b.  The right to substantive due process of law under the Fourteenth Amendment.

118.   The Defendants' failure to intervene, prevent, or stop the constitutional violations by others, when Defendants were in a position to so intervene when such violations were occurring, also renders such defendant liable for these violations.

119.   As a proximate result of the foregoing wrongful acts and or omissions, Plaintiffs sustained injuries and damages and Plaintiffs are therefore entitled to general and compensatory and punitive damages in an amount to be proven at trial.

**2nd Claim for Relief  42 U.S.C. § 1983 – Local Governing Body and Supervisory Liability**

Against Defendants LACO, LASD, Former Sheriff Villanueva, Sheriff Luna, Captain Schriner, Lieutenant Deschino, Sergeant John Doe, Sergeant Matherly and

<u>Does 1-50</u>

120.   Plaintiffs reallege and incorporate by reference the factual allegations contained in this complaint, as though fully set forth herein.

121.   Under California decisional law, there existed a special relationship between the County and the LASD on the one hand, and the plaintiffs, on the other during the time when the plaintiffs were inmates in jails owned and operated by the County and managed by Defendant Villanueva, giving rise to a legal duty of care to plaintiffs.

122.   As supervisors, Defendants Villanueva, John Doe, Schriner, Deschino and Matherly, each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights of plaintiffs.

123.   Each of the supervisory Defendants (1) directed the actions of his subordinates who participated in the use of excessive force against the pretrial detainee plaintiffs, (2) set in motion a series of acts by his subordinates, or knowingly refused to terminate a series of acts by his subordinates that he knew or reasonably should have known would cause the subordinates to deprive the plaintiffs of their constitutional and statutory rights, (3) knew that his subordinates were engaging in the acts described in this pleading and knew or reasonably should have known that the subordinate's conduct would deprive of their constitutional and statutory rights and he failed to act to prevent his subordinates from engaging in such conduct, (4) disregarded the known or obvious consequence that the training deficiencies or omissions would cause his subordinates to violate the plaintiffs' constitutional and statutory rights, and (5) engaged in conduct that showed a reckless or callous indifference to the deprivation by the subordinates of the rights of others..

124.   Plaintiffs allege that the unconstitutional actions and or omissions of the individually named LASD defendants, and the personnel acting on behalf of the County and the LASD, were done pursuant to the following customs, policies, practices and or procedures of the County and the LASD, stated in the alternative, which were directed, encouraged, allowed, and or ratified by policy making officials for the County and the LASD, including, but not limited to, the Sheriff and Does 1-10:

a.  To fail to investigate the use of excessive force by LASD deputies and officers against pretrial detainees;

b.  To fail to investigate the acquiescence by supervisors in the use of excessive force against pretrial detainees by LASD officers;

c.  To fail to investigate the cover-up of the use of force against inmates and pretrial detainees;

d.  To fail to reprimand, retrain and discipline LASD deputies and officers who use excessive force against pretrial detainees and other inmates;

e.  To fail to reprimand, retrain and discipline LASD supervisors who acquiesce in, fail to stop and cover up the use excessive force against pretrial detainees and other inmates

f.  To fail to properly ensure that inmates with injuries are not left untreated; and, *inter alia*,

g.  To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint, when the need for such was obvious, with deliberate indifference to the rights and safety of Plaintiffs and the public, and in the face of an obvious need for such policies, procedures, and training programs.

125.   In the alternative Defendants County and LASD may have instituted policies or training addressing some or all the topics listed above, but with deliberate indifference to citizens' rights, and failed to properly oversee, enforce, and or properly carry out such policies and or training.

126.   The above-described customs, policies, practices, and or procedures of the County and the LASD were a moving force and a proximate cause of the deprivations of Plaintiffs' constitutional and statutory rights, in violation of 42 U.S.C. § 1983, as more fully set forth herein.

127.   Defendants County and LASD are also liable for the violations of Plaintiffs' rights by their final policy makers, including the Sheriff and Does 1-20, as described in this pleading.

128.   The County and the LASD conducted investigations and reviews of this April 21, 2022, matter, and the Sheriff and Does 1-10 directly and personally participated in such investigations and reviews; the unconstitutional actions and or omissions of the individually named defendants, Does 1-50, other Sheriff's Department personnel, as described above, were approved, tolerated, and or ratified by policy making officials for the County and the LASD, including, but not limited to, the Sheriffs and Does 1-10. Plaintiffs are informed and believe, and thereupon allege, the details of this incident have been revealed to the authorized policy makers within the County and the LASD, and that such policymakers have direct knowledge of the fact that excessive force was used on the inmates in Unit 711 on April 21, 2022, due to their and their subordinates' conduct, and, notwithstanding this knowledge, the authorized policymakers within the County and the LASD, including Luna, have approved of the conduct of the individually named defendants and Does 1-50 and their decisions in this matter to the extent such individuals were under their supervision and oversight, and have made a deliberate, conscious, and affirmative choice to endorse and ratify such conduct and decisions, and the bases

1  for them. By so doing, the authorized policymakers within the County and the

2  LASD, have shown affirmative agreement with the conduct of individual

3  Defendants and other employees/agents under their supervision, and have ratified

4  the unconstitutional acts of these individual Defendants, employees, and agents.

5       129.   The aforementioned customs, policies, practices, and procedures; the

6  failure to properly and adequately hire, train, instruct, monitor, supervise, evaluate,

7  investigate, and discipline; and, the unconstitutional orders, approvals, ratification,

8  and toleration of wrongful conduct of Defendants County, LASD, Villanueva, and

9  Luna, and Does 1-50 were a moving force and or a proximate cause of the

10  deprivations of Plaintiffs' clearly established and well-settled constitutional rights,

11  in violation of 42 U.S.C. § 1983, as more fully set forth above and in this pleading.

12  **3rd Claim for Relief — California Civil Code § 52.1**

13  <u>Against All Defendants</u>

14       130.   Plaintiffs reallege and incorporate by reference the factual allegations

15  contained in this complaint, as though fully set forth herein.

16       131.   By their acts, omissions, customs, and policies, Defendants, acting in

17  concert or in a conspiracy, as described above, and with threats, intimidation, and or

18  coercion, violated Plaintiffs' rights under California Civil Code § 52.1 and the

19  following clearly established rights under the United States Constitution and

20  California Constitution and law:

21       a.  Plaintiffs' right to be free from an unreasonable ongoing seizure and the

22           use of excessive force and punishment as a pretrial detainee, as secured by

23           the Fourth and Fourteenth Amendments to the United States Constitution

24           and the California Constitution, Article 1, Sections 7 and 13;

25       b.  Plaintiffs' right to be free from deliberate indifference to their serious

26           medical needs while in custody as a pretrial detainee, as secured by the

27

28

1  Fourteenth Amendment to the United States Constitution and the
2  California Constitution, Article 1, Section 7;

3     c.  The right to enjoy and defend life and liberty; acquire, possess, and protect
4  property; and pursue and obtain safety, happiness, and privacy, as secured
5  by the California Constitution, Article 1, Section 1; and

6     d.  The right to protection from bodily restraint, harm, or personal insult, as
7  secured by California Civil Code § 43.

8     132.  Separate from, and above and beyond, Defendants' attempted
9  interference, interference with, and violation of Plaintiffs' rights, Defendants
10 violated Plaintiff's rights by the following conduct, among other conduct,
11 constituting threat, intimidation, or coercion:

12    a.  Intentionally using excessive force against Plaintiffs;

13    b.  Intentionally intimidating the plaintiffs and attempting to force them to
14 falsify evidence of the use of excessive force by threatening them with
15 further abuse;

16    133.  Defendant County is vicariously liable pursuant to California
17 Government Code section 815.2.

18    134.  As a direct and proximate result of Defendants' violation of California
19 Civil Code § 52.1 and of Plaintiff's rights under the United States and California
20 Constitutions and law, Plaintiffs sustained injuries and damages, and against each
21 Defendant named in this action are entitled to relief as set forth above, and punitive
22 damages against all individual Defendants, including all damages and penalties
23 allowed by California Civil Code §§ 52 and 52.1 and California law, three times
24 actual damages, and attorneys' fees.

25             **<u>4th Claim for Relief — Negligence</u>**

26                <u>Against All Defendants</u>

27    135.  Plaintiffs reallege and incorporate by reference the factual allegations

28

contained in this complaint, as though fully set forth herein.

136.   All defendants were subject to a duty of care to protect plaintiffs and other persons in their custody and to avoid causing unnecessary physical harm to such persons; the wrongful conduct of the defendants, as alleged herein, did not comply with the standard of care to be exercised by reasonable persons and as such breached Defendants' duty, causing the injuries and harm to the plaintiffs, which were a direct and proximate result of the wrongful and negligent acts and omissions of Defendants.

137.   These general duties of reasonable care and due care owed to plaintiffs by all Defendants include, but are not limited, to the following specific obligations:

a.  To provide safe and appropriate jail housing;

b.  To refrain from the use of unreasonable force against the plaintiffs, who were pretrial detainees;

c.  To obey lawful LASD regulations, standards, practices, and procedures;

d.  To summon necessary and appropriate medical care;

e.  To use generally accepted law enforcement and jail procedures that are reasonable and appropriate for pretrial detainees;

f.  To refrain from abusing their authority granted to them by law.

138.   By the acts and omissions set forth more fully in the paragraphs above, Defendants acted negligently and breached their duty of due care owed to plaintiffs, which foreseeably resulted in the suffering of damages by plaintiffs.

139.   Defendant County is vicariously liable pursuant to California Government Code section 815.2.

140.   As a proximate result of Defendants' negligence, Plaintiffs sustained injuries and damages, and against each listed Defendant in this Count are entitled to the relief described above, and as otherwise allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the class members they represent, respectfully request the following relief against each and every Defendant herein, jointly and severally:

1.     Compensatory damages and general damages, including damages for loss of enjoyment of life, in an amount according to proof;

2.     Punitive damages under 42 U.S.C. § 1983, federal law, and California law, in an amount according to proof and in an amount to deter future misconduct of the type engaged in by the defendants;

3.     All other damages, penalties, costs, interest, and attorneys' fees, as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure § 1021.5; California Civil Code §§ 52 et seq., and 52.1; California Penal Code § 4030, treble damages under California Civil Code §§ 52 and 52.1 and as otherwise may be allowed by California and or federal law; and,

4.     For such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs respectfully demand a jury trial in this action, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: June 12, 2023          JDP PC  Jeff Dominic Price

_/s/ Jeff Dominic Price_

By: Jeff Dominic Price, Attorney for Plaintiffs Kevin Stewart and Juan Carlos Vazquez, Individually and as class representatives