**O**

United States District Court
Central District of California

KEVIN STEWART et al.,

               Plaintiffs,

    v.

ROBERT LUNA et al.,

               Defendants.

Case № 2:23-cv-04641-ODW (PDx)

**ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL [35]**

## I.     INTRODUCTION

Plaintiffs Kevin Stewart and Juan Carlos Vazquez filed this putative class action against Defendants County of Los Angeles ("County"), Los Angeles County Sheriff's Department ("LASD"), Alex Villaneuva, Robert Luna, Captain Schriner, Lieutenant Deschino, Sergeant Matherly, Deputy Gutierrez, and Sergeant John Doe. (Compl., ECF No. 1.) Plaintiffs allege that, on April 21, 2022, Defendants violated constitutional, federal, and state law when LASD officers deployed tear gas, pepper spray, and pepper balls against them. Plaintiffs now move for class certification pursuant to Federal Rules of Civil Procedure ("Rule" or "Rules") 23(a) and 23(b)(3).

1    (Mot. Class Certification ("Mot." or "Motion"), ECF No. 35.)   For the reasons

2    discussed below, the Court **DENIES** Plaintiffs' Motion **WITHOUT PREJUDICE**.[1]

3                              **II.    BACKGROUND**

4           On April 21, 2022, Stewart and Vazquez were pretrial detainees housed in

5    Unit 711 at the Los Angeles County North County Correctional Facility ("NCCF")

6    located in Castaic, California.   (Compl. ¶¶ 1–2, 6, 25.)   At approximately 11:00 p.m.

7    on that date, Gutierrez, a deputy sheriff at NCCF, ordered inmates to get off the

8    phones.[2]   (*Id.* ¶¶ 14, 28.)   After two inmates refused, Gutierrez, who was standing

9    outside the Unit 711 gates, ordered all inmates housed in Unit 711 to get on their

10   bunks.  (*Id.* ¶¶ 28–29.)  The two inmates who refused to get off the phones then said

11   something to Gutierrez.  (*Id.* ¶ 32.)  In response, Gutierrez directed them to come to

12   the gates where he was standing so that he could handcuff them.  (*Id.* ¶ 33.)  Gutierrez

13   repeated his order multiple times, but each time the inmates ignored the order.  (*Id.*

14   ¶¶ 35–37.)

15          Eventually, officers threatened that if the two inmates did not go to the gates

16   within two minutes, then the officers would disperse tear gas in Unit 711.  (*Id.* ¶ 44.)

17   Before the two-minute mark passed, the officers turned on an industrial fan facing

18   Unit 711 and began tear gassing the unit.  (*Id.* ¶ 46.)  By the end of the incident, the

19   officers had dispersed approximately fifty-eight gas cannisters in front of the fan.  (*Id.*

20   ¶ 53.)  The officers also fired pepper balls and pepper spray at inmates.  (*Id.* ¶¶ 61,

21   64.)  As the tear gas filled the unit, inmates, including Stewart and Vazquez, were

22   calling for help, had difficulty breathing, and thought they were going to suffocate to

23   death.  (*Id.* ¶¶ 47–50, 57–59.)

24          Based on these allegations, Stewart and Vazquez initiated this putative class

25   action against Defendants, alleging: (1) excessive force in violation of the Fourth and

26

27   [1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the
     matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

28   [2] Unless otherwise noted, the Court uses the term "inmate"—which Plaintiffs use in the Complaint,
     (*e.g.*, Compl. ¶ 9)—to describe both pre-trial detainees and post-conviction prisoners.

Fourteenth Amendments under 42 U.S.C. § 1983; (2) supervisory liability in violation of § 1983; (3) violation of the Bane Act, California Civil Code section 52.1; and (4) negligence.  (*Id.* ¶¶ 112–40.)  Stewart and Vazquez now move to certify a class under Rules 23(a) and 23(b)(3).  (Mot.)  The Motion is fully briefed.  (First Suppl. Mem. ISO Mot. ("First Suppl. Mem."), ECF No. 49; Opp'n, ECF No. 50; Reply, ECF No. 51; Second Suppl. Mem. ISO Mot. ("Second Suppl. Mem."), ECF No. 66; Defs.' Suppl. Opp'n, ECF No. 74.)

## III.   LEGAL STANDARD

A cause of action may proceed as a class action if a plaintiff meets the threshold requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663–64 (9th Cir. 2022).  In addition, "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).  "[T]he failure [to meet] any one of Rule 23's requirements destroys the alleged class action."  *Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (noting that plaintiff bears the burden of affirmatively satisfying each element of the Rule 23 analysis).  Plaintiffs seek certification under Rule 23(b)(3), which applies where "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed R. Civ. P. 23(b)(3).

"Rule 23 does not impose a mere pleading standard; plaintiffs cannot plead their way to class certification through just allegations and assertions."  *Black Lives Matter L.A. v. City of Los Angeles*, 113 F.4th 1249, 1258 (9th Cir. 2024) (citing *Dukes*, 564 U.S. at 350, 359).  Instead, "plaintiffs must affirmatively demonstrate by a preponderance of actual evidence that they satisfy all of the Rule 23 prerequisites." *Id.* (internal quotation marks omitted).  Therefore, "plaintiffs must actually prove—

1  not simply plead—that their proposed class satisfies each requirement of Rule 23."

2  *Id.* (cleaned up).

3      A district court must perform a "rigorous analysis" to ensure that the plaintiff

4  has satisfied each of Rule 23's prerequisites.  *Dukes*, 564 U.S. at 350–51; *Ellis v.*

5  *Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011).  In many cases, "that

6  'rigorous analysis' will entail some overlap with the merits of the plaintiff's

7  underlying claim." *Dukes*, 564 U.S. at 351.  The district court may consider the merits

8  only to the extent that they overlap with the requirements of Rule 23 and "not to

9  determine whether class members could actually prevail on the merits of their claims."

10  *Ellis*, 657 F.3d at 983 n.8; *see Dukes*, 564 U.S. at 350–52.  When resolving factual

11  disputes, even in the context of a motion for class certification, district courts must

12  consider "the persuasiveness of the evidence presented."  *Ellis*, 657 F.3d at 982.

13  

**IV.   DISCUSSION**

14      Plaintiffs move to certify the proposed class, which they define differently in

15  various filings.  In the Complaint, Plaintiffs define the proposed class as:

16      All NCCF Unit 711 inmates — approximately 62 (two inmates, Treyvon
    Daniels and Mynor Larios[3] have opted out and two inmates, who did not

17

    comply with orders given by Defendant Gutierrez are excluded) — who,

18      on April 21, 2022, were subjected to continual tear gassing, pepper spray,
    and being shot with pepper balls without any justification.

19

20  (Compl. ¶ 107.)  Meanwhile, in their Motion, Plaintiffs define the "4/21/22 Mass Tear

21  Gas Damages Class" as "approximately 62 inmates in NCCF Unit 711 who were

22  subjected to continual gassing, pepper spray and shot with pepper balls without

23  justification on April 21, 2022."  (Mot. 5.)  In a later filing, Plaintiffs add that the

24  "definition of the class is all inmates who were housed in Unit 711 at the time of the

25  mass tear gassing that occurred on April 21, 2022, with the exception of the two

26

27  [3] Daniels and Larios, represented by the same counsel as Stewart and Vazquez, have initiated a
separate action concerning the April 21, 2022 incident, which is designated as a related case and also

28  before this Court.  *See Daniels v. Deschino*, No. 2:23-04621-ODW (PDx) (C.D. Cal. filed June 12,
2023).

1    inmates who disobeyed orders to get off the phones and the two plaintiffs in the

2    *Daniels* case." (Reply 10.)

3          The proposed class definition articulated in Plaintiffs' Motion and Reply, taken

4    together, approximate the definition pleaded in the Complaint.  Accordingly, for

5    purposes of this Motion, the Court analyzes whether it will certify the class definition

6    articulated in the Complaint (the "Proposed Class Definition").

7          As a threshold matter, the Court notes that it is reluctant to approve a class that

8    explicitly excludes individuals—here, Daniels and Larios—whose sole reason for

9    exclusion is counsel's unsworn assertion that the individuals "have opted out" of the

10   putative class.  (Compl. ¶ 107; *see also* Reply 10; Second Suppl. Mem. 2.)  If the

11   Court eventually certifies a class in this action, then Daniels, Larios, or any other

12   individual falling into the certified class will have the opportunity to opt in or opt out

13   consistent with notice and procedures approved by this Court.

14   **A.    Numerosity—Rule 23(a)(1)**

15         The first issue is whether the Proposed Class is sufficiently numerous such that

16   joinder of all members would be impractical.  Fed. R. Civ. P. 23(a)(1).  While "[n]o

17   exact numerical cut-off is required[,] . . . . numerosity is presumed where the plaintiff

18   class contains forty or more members."  *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D.

19   628, 634 (C.D. Cal. 2009).  Furthermore, "[w]here the exact size of the class is

20   unknown but general knowledge and common sense indicate that it is large, the

21   numerosity requirement is satisfied."  *Orantes-Hernandez v. Smith*, 541 F. Supp. 351,

22   370 (C.D. Cal. 1982).

23         Here, Plaintiffs provide sufficient evidence to establish that there were at least

24   sixty inmates in Unit 711 at the time of the incident.  (*See* Decl. Cate Beekman ISO

25   Second Suppl. Mem. ("Beekman Decl.") ¶¶ 4, 10, ECF No. 66-1 (declaring that there

26   were at least sixty inmates in Unit 711 at the time of the incident); Decl. Jeff Dominic

27   Price ISO Second Suppl. Mem. Ex. 12 ("Gutierrez RFAs") No. 6 (admitting that at

28   least sixty-three inmates resided in Unit 711 at the time of the incident).)  The class

definition excludes four individuals. (Compl. ¶ 107.) Therefore, if the remaining fifty-six inmates fall within the Proposed Class, then Plaintiffs have established numerosity.

Defendants argue that the Court should not look at the number of individuals that qualify for the Proposed Class but should instead consider the number of class members that will eventually opt into the class. (Opp'n 8.) But they cite no case law supporting this frame of reference for numerosity, and it would require the Court to blindly guess at how many class members would opt into or out of the class. Accordingly, the Court rejects this argument.

Defendants also argue that joinder of all class members is not impracticable because Plaintiffs' counsel has apparently signed representation agreements with many of the inmates who belong to the putative class. (*See* Defs.' Suppl. Opp'n 3.) Even if true, this fact alone does not contradict a finding that joinder of nearly sixty plaintiffs in this case would prove impracticable. *See Johnson v. City of Grants Pass*, 72 F.4th 868, 886 (9th Cir. 2023) ("'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class" (quoting *Harris v. Palm Springs Alpine Ests., Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964)), *overruled on other grounds*, *City of Grants Pass, Or. v. Johnson*, 144 S. Ct. 2202 (2024).

Notwithstanding the foregoing, the Court has concerns about whether Plaintiffs satisfy the numerosity requirement. While Plaintiffs have provided evidence to establish that there were at least sixty inmates in Unit 711 at the time of the incident, they have not provided evidence that these inmates fall into the Proposed Class. Having reviewed the declarations submitted in support of Plaintiffs' Motion and the videos themselves, the Court agrees that Plaintiffs have shown that at least sixty inmates in Unit 711 were subjected to the tear gas deployed by officers. (*See, e.g.*, Beekman Decl. ¶¶ 10–12.) However, Plaintiffs have not provided evidence that the fifty-six inmates (i.e., sixty inmates minus the four excluded persons) were also

1  subjected to pepper spray and pepper balls.  Plaintiffs chose to define the Proposed
2  Class as those in Unit 711 who "were subjected to continual tear gassing, pepper
3  spray, and being shot with pepper balls."  (Compl. ¶ 107; *see also* Mot. 5 (same).)
4  Thus, class members must have been tear gassed, pepper sprayed, *and* shot with
5  pepper balls.  Plaintiffs allege facts that undermine a conclusion that fifty-six inmates
6  were subjected to pepper spray and pepper balls.  (*See* Compl. ¶¶ 58, 61 (noting that
7  "some" inmates "were hit with pepper balls"); Mot. 2 (same).)

8      District courts do not "bear the burden" of correcting Rule 23(a) deficiencies.
9  *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1238 (9th Cir. 2001).  At the same
10  time, courts "have discretion to narrow a class to bring it within the requirements of
11  Rule 23."  *In re Toll Roads Litig.*, No. 8:16-cv-00262-AG (JCGx), 2018 WL 4945531,
12  at *5 (C.D. Cal. Oct. 3, 2018); *cf. Olean*, 31 F.4th at 669 n.14 (explaining that courts
13  may redefine overbroad classes).  At this stage, and under the circumstances of this
14  case, the Court will not alter the Proposed Class to only those subjected to tear gas.
15  Plaintiffs may have strategic reasons for defining the Proposed Class to include those
16  subjected to tear gas, pepper spray, *and* pepper balls.  And Plaintiffs may have
17  evidence to support numerosity for that Proposed Class.

18      Accordingly, the Court finds that Plaintiffs have not provided sufficient
19  evidence for the Proposed Class, as currently defined, to satisfy the Rule 23(a)
20  numerosity requirement.

21  **B.    Commonality—Rule 23(a)(2) & Predominance—Rule 23(b)(3)**

22      As the Proposed Class does not satisfy the numerosity requirement, the Court
23  need not address the remaining Rule 23 class certification requirements.  *See*
24  *Rutledge*, 511 F.2d at 673 ("[T]he failure of any one of Rule 23's requirements
25  destroys the alleged class action.").  Nevertheless, given that the Court's denial is
26  without prejudice, the Court will address Defendants' challenge to commonality and
27
28

1   predominance for Plaintiffs' failure to specify the incarceration status of the Proposed

2   Class.[4]  (*See* Opp'n 12.)

3           The parties most vigorously dispute whether the Proposed Class satisfies the

4   Rule 23(a)(2) commonality and Rule 23(b)(3) predominance requirements.   (*See*

5   Mot. 5–7, 10–13; Opp'n 9–13; Reply 4–5, 6–8; Second Suppl. Mem. 3–5, Defs.'

6   Suppl. Opp'n 7–9.)

7           Commonality is required for class certification and is only satisfied if "there are

8   questions of law or fact common to the class."   Fed. R. Civ. P. 23(a)(2).   The

9   commonality requirement has "been construed permissively, and all questions of fact

10  and law need not be common to satisfy the rule."   *Ellis*, 657 F.3d at 981 (cleaned up).

11  However, "it is insufficient to merely allege any common question."   *Id.*   As the

12  Supreme Court has explained, "What matters to class certification . . . is not the

13  raising of common 'questions'—even in droves—but rather, the capacity of a

14  class-wide proceeding to generate common *answers* apt to drive the resolution of the

15  litigation."  *Dukes*, 564 U.S. at 350 (alteration in original).

16          Although the commonality inquiry overlaps with Rule 23(b)(3)'s predominance

17  inquiry, *see In re AutoZone*, 289 F.R.D. 526, 533 n.10 (N.D. Cal. 2012), meeting the

18  commonality requirement is insufficient to satisfy predominance, *Hanlon v. Chrysler

19  Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998), *overruled on other grounds by Dukes*,

20  564 U.S. 338.   "The Rule 23(b)(3) predominance inquiry tests whether proposed

21  classes are sufficiently cohesive to warrant adjudication by representation."   *Amchem*,

22  521 U.S. at 623.  "This analysis presumes that the existence of common issues of fact

23  or law have been established pursuant to Rule 23(a)(2)" and focuses on "the

24  relationship between the common and individual issues."   *Hanlon*, 150 F.3d at 1022.

25          For excessive force claims, the Fourth Amendment applies to pre-trial

26  detainees, while the Eight Amendment applies to convicted prisoners.   *Hawkins*,

27  ───────────────
[4] The Court does not address Defendants' remaining challenges to commonality and predominance

28  because they are not dispositive of this Motion and Plaintiffs' amendment of the Proposed Class
definition in a revised motion may alter the Court's analysis of these challenges.

251 F.3d at 1238.  If the class consists of both convicted prisoners and pre-trial detainees, then it cannot be certified as one class for all issues.  *See id.* (holding that "[t]hese claims can be maintained in a class action only by certifying subclasses, with appropriate representation").  With different legal standards, it would be difficult for the common questions—to the extent there would be any—to predominate.  Additionally, as the proposed class representatives, Stewart and Vazquez, were pretrial detainees, (Compl. ¶ 6), they would not be adequate representatives for any class members that were convicted, *see Hawkins*, 251 F.3d at 1238; Fed. R. Civ. P. 23(a)(4) (requiring that "representative parties will fairly and adequately protect the interests of the class").

In this case, Plaintiffs do not identify whether the Proposed Class consists only of pretrial detainees.  This is not fatal to class certification.  If everyone housed in Unit 711 at the time of the incident was a pretrial detainee, then different legal standards would not apply to the Proposed Class's claims.  However, Plaintiffs do not assert—let alone offer evidence—that the Proposed Class comprises only pretrial detainees.

In the Complaint, Plaintiffs do not state that the Proposed Class contains only pretrial detainees.  (*See* Compl.)  And in response to Defendants noting the difference between pretrial detainees and post-conviction prisoners, Plaintiffs do not assert that the Proposed Class or Unit 711 only consists of pretrial detainees.  Instead, they present evidence that there are sufficient pretrial detainees to satisfy Rule 23(a)'s numerosity requirement.  (*See* Reply 3 (stating that at least thirty-four of the fifty-six inmates house in Unit 711 were pretrial detainees); Second Suppl. Mem 2. (stating that fifty-four class members were pretrial detainees).)  Plaintiffs have not been clear whether the Proposed Class also includes convicted prisoners.  (*See* Second Suppl. Mem 2 (stating that "there were at least 60 inmates housed in Unit 711" and "56 similarly situated inmates who were subjected to the officers' unlawful use of force,"

1   but then stating that "54 class members were pretrial detainees").)   Absent such

2   clarity, Plaintiffs have not met their burden to satisfy Rule 23's requirements.

3        Accordingly, the Court finds that Plaintiffs have not provided sufficient

4   evidence for the Proposed Class, as currently defined, to satisfy the Rule 23(a)

5   commonality and Rule 23(b)(3) predominance requirements.

6   **C.    Superiority—Rule 23(b)(3)**

7        To certify a class under Rule 23(b)(3), in addition to finding predominance, a

8   court must also find "that a class action is superior to other available methods for

9   fairly and efficiently adjudicating the controversy."   A class action may be superior if

10  "classwide litigation of common issues will reduce litigation costs and promote

11  greater efficiency" and "if no realistic alternative exists."   *Valentino v.*

12  *Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996).

13       As with its analysis of commonality and predominance, the Court does not

14  address each of Defendants' arguments made with respect to superiority.   Instead, the

15  Court raises sua sponte an issue with the Proposed Class that would defeat superiority.

16  Class treatment is not appropriate if the class is "fail safe," meaning "the court must

17  determine the merits of an individual claim to determine who is a member of the

18  class."   *Johns v. Bayer Corp.*, 280 F.R.D. 551, 555 (S.D. Cal. 2012); *cf. Briseno v.*

19  *ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 n.4 (9th Cir. 2017) (noting that while the

20  Ninth Circuit has not adopted a separate "ascertainability" requirement, courts address

21  "'ascertainability' issues" through analysis of Rule 23's enumerated requirements).

22  "The essence of the rule . . . holds that the class should not be defined in terms of

23  whether its members were treated properly, adequately, reasonably, or

24  constitutionally, because then class membership depends on a determination of the

25  merits as to each potential class member."   *Herrera v. LCS Fin. Servs. Corp.*,

26  274 F.R.D. 666, 673 (N.D. Cal. 2011). (internal quotation marks omitted).   Such a

27  proposed class is considered impermissibly "fail safe" because it is "defined to include

28

only those individuals who were injured by the allegedly unlawful conduct." *Olean*, 31 F.4th at 669 n.14.

Here, the class definition includes those "subjected to continual tear gassing, pepper spray, and being shot with pepper balls *without any justification.*" (Compl. ¶ 107 (emphasis added).) Whether such actions were "without any justification" to each class member is inherently a merits decision. If the LASD officers' actions were justified as to a class member, then that class member's claim would fail. This limitation is "improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Olean*, 31 F.4th at 669 n.14. This rule prevents the Court from finding that "a class action is superior to other available methods for fairly and efficiently adjudicating" this controversy. Fed. R. Civ. P. 23(b)(3).

## V.    CONCLUSION

For the reasons discussed above, the Court **DENIES WITHOUT PREJUDICE** Plaintiffs' Motion for Class Certification and Appointment of Class Counsel. (ECF No. 35.) The Court finds that Plaintiffs have not met their burden to show the Proposed Class, as currently defined, satisfies each Rule 23(a) and Rule 23(b)(3) requirement. At this time, however, the Court does not conclude that Plaintiffs are unable to construct a class that satisfies the Rule 23 requirements.

Plaintiffs may file an Amended Motion for Class Certification to cure the deficiencies discussed herein. Any such Amended Motion must be filed no later than **forty-five (45) days** from the date of this Order.

**IT IS SO ORDERED.**

January 3, 2025

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

11