**O**

# United States District Court
# Central District of California

KEVIN STEWART et al.,

                    Plaintiffs,

     v.

ROBERT LUNA et al.,

                    Defendants.

Case № 2:23-cv-04641-ODW (PDx)

**ORDER DENYING PLAINTIFFS' THIRD MOTION FOR CLASS CERTIFICATION [118]**

## I.    INTRODUCTION

Plaintiffs Kevin Stewart and Juan Carlos Vazquez filed this putative class action against Defendants County of Los Angeles, Los Angeles County Sheriff's Department ("LASD"), Alex Villaneuva, Robert Luna, Captain Schriner, Lieutenant Deschino, Sergeant Matherly, Deputy Gutierrez, and Sergeant John Doe.  (Compl., Dkt. No. 1.) Plaintiffs allege that Defendants violated federal and state law when LASD officers deployed tear gas, pepper spray, and pepper balls against them while Plaintiffs were in detention.  After two prior unsuccessful attempts, Plaintiffs now move again for class certification under Federal Rule of Civil Procedure ("Rule") 23(a) and (b)(3).  (Third

Mot. Class Certification ("Mot." or "Motion"), Dkt. No. 118.)   For the reasons discussed below, the Court **DENIES** Plaintiffs' Motion **WITH PREJUDICE**.[1]

## II.   BACKGROUND

Plaintiffs were pretrial detainees housed in Unit 711 at the Los Angeles County North County Correctional Facility ("NCCF") located in Castaic, California.  (Compl. ¶¶ 1–2, 6, 25.)  On April 21, 2022, at 11:00 p.m., Gutierrez, a deputy sheriff at NCCF, ordered inmates to get off the phones.  (*Id.* ¶¶ 14, 28.)  After two inmates refused, Gutierrez, who was standing outside the Unit 711 gates, ordered all inmates housed in Unit 711 to get on their bunks.  (*Id.* ¶¶ 28–29.)  The two inmates again refused to get off the phones.  (*Id.* ¶ 30.)  In response, Gutierrez directed them to come to the gates where he was standing so that he could handcuff them.  (*Id.* ¶ 33.)  Gutierrez repeated his order multiple times, but the two inmates ignored it.  (*Id.* ¶¶ 35–37.)

Eventually, officers threatened that if the two inmates did not come to the gates within two minutes, officers would disperse tear gas in Unit 711.  (*Id.* ¶ 44.)  Before the two-minute mark passed, officers turned on an industrial fan facing Unit 711 and began tear gassing the unit.  (*Id.* ¶ 46.)  Officers dispersed approximately fifty-eight cannisters of tear gas in front of the fan.  (*Id.* ¶ 53.)  They also fired pepper balls and pepper spray at inmates.  (*Id.* ¶¶ 61, 64.)  As the tear gas filled Unit 711, the inmates, including Plaintiffs, were calling for help, had difficulty breathing, and thought they were going to suffocate to death.  (*Id.* ¶¶ 47–50, 57–59.)

Based on these allegations, Plaintiffs initiated this putative class action against Defendants, alleging: (1) excessive force in violation of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983; (2) supervisory liability in violation of § 1983; (3) violation of the Bane Act, Cal. Civ. Code § 52.1; and (4) negligence.  (*Id.* ¶¶ 112–40.)  On January 3, 2025, the Court denied Plaintiffs' first motion to certify a class under Rule 23, with leave to file an amended motion to cure the noted deficiencies.

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

(Order Den. Mot. Class Certification ("First Class Certification Order") 11, Dkt. No. 80.)  On March 17, 2025, Plaintiffs renewed their motion.  (Renewed Mot. Class Certification, Dkt. No. 87.)  After a hearing on Plaintiffs' renewed motion, the Court adopted its tentative ruling and denied Plaintiffs' motion without prejudice, giving Plaintiffs "one <u>final</u> opportunity to move to certify a class."  (Order Den. Renewed Mot. Class Certification ("Second Class Certification Order"), Dkt. No. 112.)  Plaintiffs now bring a third motion to certify a class under Rule 23.  (Mot.)

### III.   LEGAL STANDARD

A cause of action may proceed as a class action if a plaintiff meets the threshold requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663–64 (9th Cir. 2022).  In addition, "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).  "[T]he failure [to meet] any one of Rule 23's requirements destroys the alleged class action."  *Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (noting that plaintiff bears the burden of affirmatively satisfying each element of the Rule 23 analysis).  Plaintiffs seek certification under Rule 23(b)(3), which applies where "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed R. Civ. P. 23(b)(3).

"Rule 23 does not impose a mere pleading standard; plaintiffs cannot plead their way to class certification through just allegations and assertions."  *Black Lives Matter L.A. v. City of Los Angeles*, 113 F.4th 1249, 1258 (9th Cir. 2024) (citing *Dukes*, 564 U.S. at 350, 359).  Instead, "plaintiffs must affirmatively demonstrate by a preponderance of actual evidence that they satisfy all of the Rule 23 prerequisites."

*Id.* (citation modified). Thus, "plaintiffs must actually prove—not simply plead—that their proposed class satisfies each requirement of Rule 23." *Id.* (citation modified).

A district court must perform a "rigorous analysis" to ensure that the plaintiff has satisfied each of Rule 23's prerequisites. *Dukes*, 564 U.S. at 350–51; *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011). In many cases, "that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 351. The district court may consider the merits only to the extent that they overlap with the requirements of Rule 23 and "not to determine whether class members could actually prevail on the merits of their claims." *Ellis*, 657 F.3d at 983 n.8; *see Dukes*, 564 U.S. at 350–52. When resolving factual disputes, even in the context of a motion for class certification, district courts must consider "the persuasiveness of the evidence presented." *Ellis*, 657 F.3d at 982.

## IV.  DISCUSSION

Plaintiffs move to certify either of two proposed classes: (1) "Unit 711 Chemical Weapons Area Saturation Class A," which Plaintiffs define as "Pretrial detainees in Unit 711 on April 21–22, 2022, who were subjected to the use of area saturation with chemical agents—tear gas, Clear Out and pepper balls"; or (2) "Unit 711 Chemical Weapons Area Saturation Class B," which Plaintiffs define as "Pretrial detainees in Unit 711 on April 21–22, 2022, who were subjected to the use of area saturation with chemical weapons—tear gas and Clear Out." (Mot. 9.)

The Court finds that the Plaintiffs established numerosity, commonality, and typicality as required under Rule 23(a)(1)–(3). However, Plaintiffs, once again, failed to demonstrate adequacy as required under Rule 23(a)(4), and predominance and superiority as required Rule 23(b)(3).

### A.  Adequacy—Rule 23(a)(4)

Plaintiffs have not demonstrated adequacy as required under Rule 23(a)(4).

Under Rule 23(a)(4), the class representative must "fairly and adequately protect the interests of the class." "To determine whether the representation meets this

4

standard, [courts] ask two questions: (1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

Plaintiffs assert that their "interests coincide with the interests of the proposed class members because [they] all share a common injury" and "there are no conflicts of interest between the named plaintiffs and unnamed class members." (Mot. 12.) Plaintiffs also declare that they "will represent the interests of the class as a whole and not just [their] personal interests." (Decl. Kevin Stewart ISO Mot. ¶ 4; Dkt. No. 118-2; Decl. Juan Carlos Vasquez ISO Mot. ¶ 4; Dkt. No. 118-3.) The Court finds that Plaintiffs' evidence is sufficient to show that they understand their duties as class representatives and would vigorously prosecute this action on behalf of the class.

As to the adequacy of class counsel, the Court previously expressed its concerns regarding Plaintiffs' counsel's potential conflict of interest as to his representation of Treyvon L. Daniels and Mynor D. Larios in a separate but related action, and counsel's lack of class action litigation experience. (*See* Second Class Certification Order 11–13.) Daniels and Larios, who were both present in Unit 711 during the April 21, 2022 incident, elected not to proceed with this class and instead initiated a separate action which is designated as a related case and also before this Court. *See Daniels v. Deschino*, No. 2:23-04621-ODW (PDx) (C.D. Cal. filed June 12, 2023). Larios has since died, and his successors in interest have been substituted as plaintiffs in lieu of Larios and are represented by the same counsel as Plaintiffs in this action.

As to Daniels, counsel and Daniels had a prior dispute that required counsel to withdraw from representing Daniels. Counsel now declares that he and Daniels have remedied their conflict, and the Court granted counsel's motion to withdraw. (Decl. Jeff Dominic Price ISO Mot. ¶ 6, Dkt. No. 118-4.) However, counsel simultaneously declares that "Daniels has asked [him] to resume representing [Daniels]" and counsel has been assisting Daniels "in the context of this case." (*Id.*) It is unclear to the Court

whether counsel intends to represent Daniels again or in what capacity counsel is assisting Daniels in this case. As to Larios's successors, counsel asserts that "there would be no conflict whether or not Larios's wife and children opted out of the class." (*Id.* ¶ 7.) However, counsel has not demonstrated that no conflict of interest exists as to his representation of the class in this case and his representation of Larios's successors in the separate case, as well as his continued involvement with Daniels. Specifically, counsel does not explain whether Daniels's and Larios's successors' interests are aligned with those of the class members here. As it stands, Daniels and Larios's successors may have litigation objectives or interests that are adverse to those of the class members in this case. Nor does counsel explain how his representation of Larios's successors, his continued involvement with Daniels, and his role as lead class counsel in this case affect his ability to represent the class without divided loyalties.

As to counsel's experience, he acknowledges that he has "very little experience litigating class action cases," but represents that he is "able to consult with [his] colleagues . . . regarding the litigation of this case." (*Id.* ¶ 8.) However, considering counsel's lingering potential conflicts of interest, his lack of class action litigation experience, and that this is Plaintiffs' third unsuccessful attempt to certify a class, the Court questions whether counsel's representation of the class would be adequate.

Accordingly, the Court finds that Plaintiffs have not provided sufficient evidence to satisfy the Rule 23(a)(4)'s adequacy requirement.

## A. Predominance & Superiority—Rule 23(b)(3)

The Court finds that Plaintiffs have failed to demonstrate predominance and superiority as required for class certification under Rule 23(b)(3).

To certify a Rule 23(b)(3) damages class, a court must "find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "Common issues predominate over individual issues when the common issues represent a significant aspect of the

case and they can be resolved for all members of the class in a single adjudication." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1182 (9th Cir. 2015) (citation modified).

As part of the predominance inquiry under Rule 23, plaintiffs must demonstrate that "damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). Plaintiffs must present a damages model consistent with their theory of liability; that is, a damages model measuring "only those damages attributable to that theory." *Id.* at 35. "Calculations need not be exact," but "at the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case." *Id.* (citation modified).

In addition to finding predominance, a court must also find "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3). A class action may be superior if class-wide litigation of common issues "will reduce litigation costs and promote greater efficiency" and "if no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996). Pursuant to Rule 23(b)(3), to determine superiority, a court must consider the (1) "class members' interests in individually controlling the prosecution or defense of separate actions;" (2) "extent and nature of any litigation concerning the controversy already begun by or against class members;" (3) "desirability or undesirability of concentrating the litigation of the claims in the particular forum;" and (4) "the likely difficulties in managing a class action."

Plaintiffs, once again, fail to propose an adequate plan to address the damages phases in this case. The Court previously found that, because Plaintiffs failed to propose an adequate damages plan, the Court was "unable to determine whether the common issues predominate over the individual ones and whether a class action is superior to other available methods for fairly adjudicating the controversy." (Second Class Certification Order 15.) Plaintiffs now argue that damages "can be addressed based upon a statistical analysis of similar cases in other districts." (Mot. 17.) But Plaintiffs offer no support for their proposition that damages in other "similar cases"

are admissible, or that they can be used by the trier of fact to calculate damages here. Further, Plaintiffs do not cite "similar cases" or provide their own statistical analysis. *See In re Myford Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2016 WL 7734558, at *15 (N.D. Cal. Sept. 14, 2016) ("[T]he problem is not just that the Court will have to look into individual situations to determine the appropriate measure of damages; it is that Plaintiffs have not even told the Court what data it should look for.").

Plaintiffs also argue that "[California] Civil Code § 52.1 provides for statutory damages, which can be multiplied," that "[s]ome class members would likely accept statutory damages," and that "[t]hose who did not could pursue their individual damages after liability determination." (Mot. 17.)  However, while statutory damages may be available for a Bane Act violation, which Plaintiffs need not prove, there are no such damages for Plaintiffs' other claims.  Thus, Plaintiffs must still offer a damages model for their compensatory damages.  Moreover, Plaintiffs argument that some class members "would likely" accept statutory damages is speculative and undermines numerosity.

Finally, Plaintiffs argue that "[t]he presence of individualized damages cannot, by itself, defeat certification under Rule 23(b)(3)."  (Mot. 16 (quoting *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).)  That is true.  However, "[u]ncertainty regarding class members' damages does not prevent certification of a class *as long as a valid method has been proposed* for calculating damages." *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017), *rev'd on other grounds*, 586 U.S. 188 (2019) (emphasis added).  Plaintiffs not only do not offer a damages model that "lacks certain variables of functionality," they offer "no damages model at all." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 944 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017).  Thus, Plaintiffs fail to persuade the Court that their "methodology" is sufficiently reliable as a common methodology such that damages "could feasibly and efficiently be calculated once the common liability questions are adjudicated." *Leyva*, 716 F.3d at 514.

## V.    CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiffs' Third Motion for Class Certification.  (Dkt. No. 118.)  As the Court has given Plaintiffs "several opportunities to correct their failed attempts," the denial is **WITH PREJUDICE**.  *See Palmer v. Stassinos*, No. C-04-03026 RMW, 2006 WL 2642530, at *4 (N.D. Cal. Sept. 14, 2006) (denying motion for class certification with prejudice because the plaintiffs had several opportunities to correct deficiencies but failed to do so).

**IT IS SO ORDERED**.

June 2, 2026

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

9